UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRIDENT STEEL CORPORATION, | ) |
| Plaintiff/Counter-Defendant, | ) ) ) |
| vs. | ) Case No. 4:09cv1332 TCM ) |
| OXBOW STEEL INTERNATIONAL, LLC., and MARK STEEL INTERNATIONAL, LLC., | ) ) ) ) ) |
| Defendants/Counter-Claimants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on a motion to transfer venue to the United States District Court for the Central District of California ("Central District of California") ("motion to transfer") filed by Oxbow Steel International, LLC ("Oxbow Steel") and Mark Steel International, LLC ("Mark Steel") (collectively referred to as Defendants) [Doc. 7]. Trident Steel Corporation ("Trident Steel" or "Plaintiff") opposes the motion, and Defendants filed a reply. Additionally, the parties filed evidentiary materials, including declarations and exhibits, in support of their positions on this motion.

## Background

By an amended petition Plaintiff seeks damages for Defendants' alleged breach of

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

The case was originally filed in the Circuit Court for the County of St. Louis, Missouri, and was removed to this Court based on this Court's diversity jurisdiction. (Doc. 1 at 1-3.)

contract, breach of express warranties, and breach of the implied warranty of fitness for a particular purpose in providing Plaintiff with steel pipe not conforming to Plaintiff's specifications, specifically, for providing pipe not free of contaminants on the pipe's Interior Diameter ("ID"). (Doc. 1 at 1-17.) Plaintiff also presents two claims for relief under Missouri's Declaratory Judgment Act, Missouri Revised Statutes § 527.010, *et seq*. (Id. at 7-12.) The first declaratory relief claim arises out of Defendants' failure to accept Plaintiff's rejection of the contaminated pipe, Defendants' failure to indemnify Trident for the contaminated pipe, and Defendants' demand that Plaintiff pay for the contaminated pipe. (Id. at 7-9.) The second declaratory relief claim arises out of Defendants' partial and late shipments of Oil Country Tubular Goods ("OCTG") ordered by Plaintiff, which Plaintiff canceled due to the incomplete and late shipments and for which Defendants demand payment. (Id. at 9-12.)

Defendants filed an answer and counterclaim. (Doc. 6.) By their counterclaim, Defendants seek at least $2.8 million in damages for Plaintiff's alleged breach of contract, for Plaintiff's alleged breach of the implied covenant of good faith and fair dealing, and for the full price of the pipe under California Commercial Code § 2709 due either to Plaintiff's alleged acceptance and then allegedly wrongful rejection of the pipe or to Defendants' inability to resell the rejected pipe. (Id. at 8-13.) Defendants also seek declaratory relief on the grounds the parties dispute whether Plaintiff is contractually obligated to accept delivery of and pay for the ordered pipe and OCTG. (Id. at 13-14.)

Plaintiff filed the original petition in this case on May 13, 2009. [Doc. 1 at 34.] On

July 22, 2009, Oxbow Steel filed an action in California against Trident Steel, <u>Oxbow Steel Intern'l, LLC v. Trident Steel Corp.</u>, Case. No. 09-5325, seeking $2.8 million due to Trident Steel's alleged failure to pay for the outstanding orders ("the California litigation"). (Def't Mtn. Transfer ¶ 5 [Doc. 7]; Labbad Decl. ¶ 6 [Doc. 12-9]; Ex. M to Brockland Decl. [Doc. 8-2 at 57-66].) The Central District of California has entered a stay of that action pending resolution of this action. (Doc. 23.)

Plaintiff Trident Steel is a Missouri corporation with its principal place of business in St. Louis, Missouri. (Beckmann Decl. ¶ 2 [Doc. 12-2].) In addition to its headquarters in St. Louis, Missouri, Trident Steel maintains "substantial operations in Houston, Texas." (<u>Id.</u>) Plaintiff specializes in the distribution of steel line pipe and other goods for use in the oil and gas industry.

Defendant Oxbow Steel is a limited liability company organized under the laws of Delaware, with its principal place of business in Pleasant Hill, California. (Catterlin Decl. ¶ 3 [Doc. 8-1]; Brockland Decl. ¶ 3 [Doc. 8-2]; Catterlin Decl. ¶ 3 [Doc. 20-1].)

Defendant Mark Steel is a limited liability company organized under the laws of California, with its principal place of business in Los Angeles, California. (Catterlin Decl. ¶ 2 [Doc. 8-1]; Brockland Decl. ¶ 2 [Doc. 8-2]; Catterlin Decl. ¶ 2 [Doc. 20-1].)

For over four years, Plaintiff and Defendants have had a business relationship through which Trident Steel places orders to purchase steel pipe from Oxbow Steel, through its sales agent, Mark Steel. (Catterlin Decl. ¶ 4 [Doc. 8-1]; Catterlin Decl. ¶ 4 [Doc. 20-1]; Dijak Decl. ¶ 4 [Doc. 20-2].) In 2008, Trident Steel placed over forty orders with Oxbow Steel,

including the thirteen purchase orders in dispute in this case, purchase orders numbered 5959, 6215, 6216, 6379, 9619, 9620, 9621, 9622, 9623, 9624, 9811, 9812, and 9814, which total approximately $3 million. (Catterlin Decl. ¶ 10 [Doc. 8-1]; Catterlin Decl. ¶ 12 [Doc. 20-1].) Trident Steel's purchase orders are directed either to Mark Steel's Los Angeles, California office or to Mark Steel's agent, Heights Trading, Limited (Heights Trading), in Houston, Texas, which is owned by Nicole Dijak, for forwarding to Mark Steel's Los Angeles, California office. (Catterlin Decl. ¶ 5 [Doc. 8-1]; Catterlin Decl. ¶ 5 [Doc. 20-1]; see also Dijak Decl. ¶¶ 2, 3 [Doc. 20-12]; Dijak Decl. ¶¶ 1, 7 [Doc. 20-2].) All of Trident Steel's orders are addressed to "Mark Steel/Oxbow Steel Los Angeles, CA." (Catterlin Decl. ¶ 5 [Doc. 8-1]; Catterlin Decl. ¶ 5 [Doc. 20-1]; Dijak Decl. ¶ 7 [Doc. 20-2].)

Mark Steel notifies Oxbow Steel of any purchase order Mark Steel receives from Trident Steel. (Catterlin Decl. ¶ 12 [Doc. 8-1]; Catterlin Decl. ¶ 14 [Doc. 20-1].) All orders Trident Steel sends to Heights Trading are placed with Mark Steel and Oxbow Steel. (Dijak Decl. ¶ 3 [Doc. 20-2].)

After receiving a purchase order from Trident Steel, Oxbow Steel purchases and imports pipe made to Trident Steel's specifications from steel mills in Taiwan and China. (Catterlin Decl. ¶¶ 6, 12 [Doc. 8-1]; Catterlin Decl. ¶¶ 6, 14 [Doc. 20-1]; Dijak Decl. ¶ 8 [Doc. 20-2].) Additionally, upon receipt of a purchase order from Trident Steel, Oxbow Steel sends Trident Steel both an Oxbow Steel sales acknowledgment and Oxbow Steel's one-page General Terms and Conditions document. (Catterlin Decl. ¶ 11 [Doc. 8-1]; Catterlin Decl. ¶ 13 [Doc. 20-1]; see also Dijak Decl. ¶ 8 [Doc. 20-2].) Oxbow Steel

4

transmits those documents to Trident Steel either from Oxbow Steel's Pleasant Hill, California office or from Mark Steel's Los Angeles, California office. (Catterlin Decl. ¶ 13 [Doc. 20-1]; see also Dijak Decl. ¶ 8 [Doc. 20-2].) On the orders placed with Defendants, Trident Steel sends its payments to California. (Catterlin Decl. ¶ 7 [Doc. 8-1]; Catterlin Decl. ¶ 9 [Doc. 20-1]; Dijak Decl. ¶¶ 11, 12 [Doc. 20-2].) Trident Steel has paid for some of the orders at issue in this case. (Catterlin Decl. ¶ 14 [Doc. 8-1]; Catterlin Decl. ¶ 16 [Doc. 20-1]; Beckmann Decl. ¶ 9 [Doc. 12-2].)

No officer or agent of Trident Steel has ever traveled to California to negotiate a purchase order or to make a sales call. (Beckmann Decl. ¶ 14 [Doc. 12-2].)

Trident Steel does not maintain and has never maintained an office or facility in California. (Beckmann Decl. ¶ 15 [Doc. 12-2].) Trident Steel does not have any employees, salespersons, or representatives in California. (Id.) Trident Steel does not own or rent real property in California, and has never done so. (Id.) Trident Steel does not maintain a registered agent in California, and has not been licensed, authorized, or qualified to transact business as a foreign corporation in California. (Id.) Additionally, Trident Steel does not maintain any California bank accounts, or any California mailing addresses or telephone listings. (Id.)

Defendants do not have an office or employee in Missouri. (Catterlin Decl. ¶ 15 [Doc. 8-1]; Catterlin Decl. ¶ 17 [Doc. 20-1].)

Plaintiff has identified two "substantial party witnesses" who work for Trident Steel in St. Louis County, Missouri. (Beckmann Decl. ¶17 [Doc. 12-2].) Those two witnesses,

5

Plaintiff reports, will testify

> to the negotiation of, and entry into, the [purchase orders], as well as the reasons for rejection of the [pipe and OCTG that are in dispute here], Trident [Steel]'s partial payment for same, the reported condition of the [pipe and OCTG at issue in this case], and Trident [Steel]'s damages.

(Id.) Plaintiff further declares that "[b]ecause the vast majority of Trident [Steel]'s dealings and communications were with Ms. Dijak, Trident [Steel] expects that she will testify as to her communications and dealings with Trident [Steel] on behalf of Mark Steel and Oxbow [Steel]." (Id. at ¶ 18.) Plaintiff also states that there will be substantial testimony elicited "from one or more [unidentified] representatives of Innova, a Houston-based company that served as Trident [Steel]'s independent inspection service [because the pipe and OTCG were delivered to, and inspected in, Houston, Texas.]" (Id. at 19.) The Innova representatives would testify about the "condition of that portion of the [pipe and OTCG] inspected and found to be defective." (Id.) Finally, Plaintiff reports it anticipates that "one or more [unidentified] representatives of Womble, another Houston company that stored the [pipe], and provides [fusion bond epoxy ("FBE")] coating for the pipe, may testify as to the suitability of the [pipe] at issue," and that unidentified representatives of a different Houston-based inspection service used by Defendants may testify. (Id. at ¶¶ 20, 21.)

Defendants have identified five witnesses who are located in California and employed by Oxbow Steel and Mark Steel who may testify due to their "personal knowledge of the orders at issue and the relevant course of performance, course of dealing, and industry customs." (Catterlin Decl. ¶ 16 [Doc. 8-1].) Additionally, Defendants report other potential

witnesses "include [unidentified] employees of the Houston, Texas receiving facility, where the product was delivered and is currently located; [and] Nicole Dijak of Heights Trading, an independent sales agent who resides in Houston." (Id. at ¶ 18.) Defendants further state they "anticipate the need for testimony from [unidentified] steel mill employees concerning technical issues surrounding the manufacturing process, including what material is contained on the pipe ID and how it gets there." (Catterlin Decl. ¶ 18 [Doc. 20-1].) The steel mill witnesses are located in Taiwan and China. (Id.)

Defendants move to transfer this case to the Central District of California under 28 U.S.C. § 1404(a). Defendants argue this case should be transferred to that court because Plaintiff's damages claims here are spurious and this action is really only an action for declaratory relief; the Central District of California is a significantly more convenient forum for the parties and witnesses than the Eastern District of Missouri, because "the vast majority of witnesses reside in California or the Far East"; the interests of justice weigh heavily in favor of the transfer; and this Missouri action could have been brought in the Central District of California. (Id. ¶¶ 7-10.)

## Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that venue in this judicial district is proper. See **Van Dusen v. Barrack**, 376 U.S. 612, 634 (1964) ("[Section] 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege").

Additionally, there is no question that this case might have been brought in the Central District of California as Los Angeles, California, where Defendant Mark Steel is located, is in the Western Division of the Central District of California.[2]  28 U.S.C. §§ 84(c)(2), 1391(a), 1391(c).

"The statutory language [of § 1404(a)] reveals three general categories of factors that courts *must* consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." **Terra Int'l, Inc. v. Mississippi Chem. Corp.**, 119 F.3d 688, 691 (8th Cir. 1997) (emphasis added).  A district court's evaluation of a motion to transfer is not limited, however, to these three factors.  **Id**.; **id.** at 696 ("a transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues").  A district court has the discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" **Stewart Org., Inc. v. Ricoh Corp.** 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).

When exercising its discretion, the Court is mindful of the well-established principle that the party seeking a transfer bears the burden of proving a transfer is warranted.  **Terra**

---

[2]  This Court will not address the parties' arguments whether or not the Central District of California would have jurisdiction over Trident Steel, because Trident Steel is not a defendant in this case.  There is no dispute that the Central District of California would have jurisdiction over Mark Steel and Oxbow Steel, the Defendants in this case.  (See, e.g., Def't Mem. Supp. Mot. Transfer Venue at 10; Catterlin Decl. ¶¶ 2, 3 [Docs. 8-1, 20-1].)

**Int'l, Inc.**, 119 F.3d at 695 ("the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted"); accord **Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.**, 244 F. Supp.2d 1015, 1022 (E.D. Mo. 2002) ("a party moving for transfer under 28 U.S.C. § 1404(a) must bear the burden of showing that transfer is justified"). For the Court gives considerable deference to a plaintiff's choice of forum. **Terra Int'l, Inc.**, 119 F.3d at 695; see also **All Sports Arena Amusement, Inc.**, 244 F.Supp.2d at 1022 ("Courts generally give great deference to a plaintiff's choice of forum"); **Anheuser-Busch, Inc. v. City Merch.**, 176 F. Supp.2d 951, 959 (E.D. Mo. 2001) ("In considering a § 1404(a) motion, the Court must give great weight to the plaintiff's choice of a proper venue"). "There is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." **Van Dusen**, 376 U.S. at 633-34. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff . . . ." **In re Nat'l Presto Indus., Inc.**, 347 F.3d 662, 665 (7th Cir. 2003). "[Section] 1404(a) provides for transfer 'to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.'" **American Standard, Inc. v. Bendix Corp.**, 487 F. Supp. 254, 261 (W.D. Mo. 1980) (quoting Van Dusen, 376 U.S. at 645-46).

Convenience of Witnesses. "[T]he most important factor in passing on a motion to

9

transfer under [28 U.S.C. §] 1404(a) . . . is the convenience of the witnesses." 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3851 at 199 (3rd ed. 2007); see also **City Merch.**, 176 F. Supp.2d at 959 ("The primary, if not most important of [the § 1404(a) factors] is the convenience of the witnesses") (internal quotation marks omitted) (quoting May Dept. Stores Co. v. Wilansky, 900 F. Supp. 1154, 1165 (E.D. Mo. 1995)); **American Standard, Inc.**, 487 F. Supp. at 262 (holding to same effect). Notably, the "sheer numbers of witnesses will not decide which way the [witness] convenience factor tips." **Terra Int'l, Inc.**, 119 F.3d at 696 (internal quotation marks and citation omitted). See **American Standard, Inc.**, 487 F. Supp. at 262 ("if the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied").

Here, Defendants urge that the majority of party witnesses are located in California rather than Missouri. The difference in number of witnesses, however, is not determinative. **Terra Int'l, Inc.**, 119 F.3d at 696. The parties acknowledge that at least two of Plaintiffs' employees, who are in Missouri, are expected to testify at trial. Defendants report they anticipate calling a potential of five party witnesses who are employed by Defendants and are in California. There is, however, no contention by Defendants that they would not be able to produce these California witnesses in Missouri, should their live testimony be deemed necessary at a trial in Missouri.

As for non-party witnesses, Defendants point out at least two individuals in Texas and an unidentified number of employees of the steel mills in Taiwan and China, may also testify at trial. Plaintiff notes several individuals in Texas may be testifying at trial. The fact individuals in Texas, Taiwan, and China may testify at trial does not weigh heavily in favor of a California court over this Missouri court, in light of the ease of airplane travel and the availability of alternative methods of presenting witness testimony. Notably, Defendants have not shown how the taking and introduction of depositions of any witness(es) would adversely affect their litigation of this lawsuit in Missouri.

Moreover, moving the case to California would create a convenience for Defendants and an inconvenience for Plaintiff. One side's witnesses will be inconvenienced by either choice of venue. "'Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue.'" **Terra Int'l Inc.**, 119 F.3d at 696-97 (quoting Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992)).

Consideration of convenience of the witnesses does not favor transfer.

Convenience of the Parties. Defendants urge that two of the three parties, both Defendants, are located in California. Just as the number of witnesses in a particular venue should not decide the convenience of the witnesses, the number of parties in a particular venue should not in and of itself determine the convenience of the parties. No one contends they would be unable to produce party witnesses at a trial in either California or Missouri.

To the extent the location of documents and goods outside of Missouri should be considered with respect to the convenience of the parties, the goods at issue here, as well as

11

inspections and certain communications relevant to the issues in this case, are in Texas, rather than either California or Missouri. Therefore, this does not favor either Missouri or California. To the extent this factor also addresses the location of the challenged conduct, **Terra Int'l, Inc.**, 119 F.3d at 696, it appears that the conduct challenged in this lawsuit may have occurred in Texas, California, or Missouri, or possibly Taiwan or China. The location of the challenged conduct, therefore, also does not clearly favor either California or Missouri. A shift in venue to California would work an inconvenience and expense on Plaintiff, because Plaintiff lacks property, offices, and employees in California, similar to the inconvenience Defendants will experience with the lawsuit in Missouri because they do not have property, offices, or employees in Missouri. A mere shift in the inconvenience of the parties is not, however, sufficient to grant transfer. See **Terra Int'l Inc.**, 119 F.3d at 696-97.

Defendants urge that the inconvenience to Plaintiff of litigating this lawsuit in California will be less than the inconvenience to Defendants of litigating this case in Missouri because Trident Steel is a defendant in an unrelated action in the Central District of California, Pusan Pipe America, Inc. dba SeAH Steel America, Inc. v. Trident Steel Corp., Case No. BC406786 ("the SeAH litigation"). (See Labbad Decl. ¶¶ 2-4 [Doc. 12-9].) Even if consideration of such unrelated litigation would be proper in addressing a motion to transfer under § 1404(a), the SeAH litigation has been resolved and dismissed with prejudice. (Id. ¶ 5.) Therefore, the SeAH litigation has no bearing on the transfer issue before this

Court.

The convenience of the parties does not support transfer of this lawsuit to the Central District of California.

Interests of Justice.  Included in the interests of justice factor are such considerations as "judicial economy," "the plaintiff's choice of forum," "the comparative costs to the parties in litigating in each forum," "obstacles to a fair trial," and "the advantages of having a local court determine questions of local law."  **Terra Int'l, Inc.**, 119 F.3d at 696.  Accord **City Merch.**, 176 F. Supp.2d at 959 (considerations include the availability of judicial process to compel testimony from hostile witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations of cost and efficiency); **American Standard, Inc.**, 487 F. Supp. at 264 (considering the location of records and documents).

Considerations of costs and efficiency appear to favor equally the Central District of California and this judicial district.  No party has argued either that a hostile witness will be called or that a hostile witness will not be able to appear due to the location of the litigation.  Consideration of the ease of access to the sources of proof favors neither venue as both locations will have access to the sources of proof on the contract and warranty claims, as well as the declaratory judgment claims.  Additionally, there is no obstacle to obtaining a fair trial in either venue.

Furthermore, any issues of Missouri and California law applicable to the claims do

not favor transfer. Missouri law applies in this case upon transfer under 28 U.S.C. § 1404(a). **Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH**, 495 F.3d 582, 585-86 (8th Cir. 2007) (for § 1404(a) transfers, the transferee court applies the choice-of-law rules of the state where the transferor court sits); **Wisland v. Admiral Beverage Corp.**, 119 F.3d 733, 736 (8th Cir. 1997) (the law of the transferor court applies upon transfer under § 1404(a)). Neither party contends the California court would be unable to interpret and apply Missouri law. To the extent California law applies, this Court is accustomed to presiding over diversity actions in which the interpretation of state law other than Missouri is required. Just as the Central District of California would be capable of applying Missouri law to the pertinent claims, this Court is capable of applying California law to the pertinent claims. Neither party gains an advantage in the consideration of local law.

Therefore, the interests of justice also do not favor transfer of this case to the Central District of California.

## **Conclusion**

Having considered the relevant factors under 28 U.S.C. § 1404(a) and the weight to be given Plaintiff's choice of forum, the motion to transfer the case to the Central District of California is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to transfer venue to the United States

District Court for the Central District of California is **DENIED** [Doc. 7].

>	/s/Thomas C. Mummert, III
>	THOMAS C. MUMMERT, III
>	UNITED STATES MAGISTRATE JUDGE

Dated this 5th of October, 2009.